[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action for damages in three counts. The first appears to be for breach of contract; the second for unjust enrichment; and the third under our Product Liability statute, C.G.S. § 52-572(h).
Facts
On March 15, 1992, the plaintiffs, signed a contract (Contract), with the defendant to buy a used 1989 Celebrity 285XB motor boat (Boat) from it. The Contract excludes all warranties. CT Page 8412
At the same time they agreed to lease from defendant a slip for the 1992 season for $1802. The purchase was not from the previous owner and operator, Harold Smith (Smith).
On March 25, 1992, the Contract for the boat was modified by additional language, (Modification) in pertinent part, as follows:
"3/25/92 this offer subject to satisfactory Sea Trial and survey and customer satisfaction and Seaboard Marina to make vessel ready for Seatrial (sic) at N/C to purchaser"
The court finds that N/C as used there means "no charge". This statement was signed by Michael Buenaventura, president of defendant who prepared the statement on a photocopy of the Contract.
At that time plaintiffs had not paid the full purchase price of the boat. The parties had a continuing business relationship thru the slip lease and the potential for future repairs and storage.
A sea trial occurred in early April 1992. The purposes were to teach plaintiff Wayne Tursi (Wayne) the operation of the boat and to test it for defects. One engine overheated; there was an "odor of fuel"; it had a "rough idle"; and there was a shifting problem.
As of April 29, 1992 plaintiffs told defendant that the Air Conditioner "pump is not pulling water and its operating O.K." Defendant ordered a part for it. At the same time defendant discovered the following problems:
 1) Windshield wiper on right. Defendant replaced the motor and resolved the wiper problem.
 2) The toilet would not "take prime". The toilet was repaired but continued to have a flushing problem. That too was corrected by defendant.
3) There was "bad gas". It was removed.
 4) All "zinks" needed replacement or changing. They were changed. CT Page 8413
 5) The engine was "hard shifting" and it stalled. Defendant fixed the hard shifting at no charge to plaintiff. By June 1, 1992 the stalling problem was resolved.
6) Two batteries might need charging. They were charged.
 7) Air Conditioner water pump housing was broken. The court cannot find that an air conditioner question is to be solved by a seatrial finding of a problem. But it was not a problem by August 1994. In addition the court cannot find proof that plaintiffs paid anyone for that repair except defendant. Finally defendant repaired it per Exhibit B.
 8) Both carburetors were "shellaced up". Both were rebuilt.
 9) There was a "gas odor". There was no gas odor on the boat on the sea trial; it was the odor of shellac in the carburators.
No "survey" was ever done by or for plaintiffs.
The plaintiff Wayne was never satisfied with the repair work done by defendant. The court cannot find that the repairs required by the Modification were inadequate or that there was ever a dangerous condition on the boat. Sometime between June 1, 1992 and July 6, 1992 plaintiff ran the boat aground. As a result part of the bottom appeared "sandblasted"; one skeg was "chewed-up a little"; the other skeg just sand-blasted; part of the outdrive had lost its paint; and the right engine's heat exchanger was packed full of sand. These conditions did not exist when the boat was sold to plaintiff.
There was a working fume detector in the boat which never "went off" to indicate gas fumes.
Defendant removed "old gas" from boat in April 1992 and had to pay to dispose of it. This was not covered by either the Contract or the Modification.
By at least June 1, 1992 there was no overhearing or CT Page 8414 noise problem with the boat.
Defendant did some work without charge under the Modification and some work for which it charged because defendant's operators felt those items were not approved by the Modification.
The defendant provided the dock space to plaintiffs as agreed.
A clear vinyl "window" was cracked and defendant replaced it. Plaintiffs were charged for this and paid $53.11. Plaintiffs did not believe that was covered by the terms of the Modification.
The work done on the canvas cover by Topside Canvas 
Upholstery Inc. was not part of the Contract or Modification.
By June 23, 1992 plaintiffs had paid $37,500 for the boat. Because of the questions about the state sales tax reduction due to the possible trade-in of another boat by plaintiffs the sum of $272, was still owed to defendant on the purchase.
Sometime in June 1992 plaintiff discovered a problem with the boat's LORAD system. Lorad company repaired it and plaintiffs paid $42.00 for that repair. This was not covered by the Modification or the Contract.
As of August 16, 1994 plaintiffs only claims in regard to the sea trial problems or defects were "engine stalling, improper shifting of engine, gas odor in cockpit of vessel and engine running hot."
On trial plaintiffs' damage claim included only $792 for charges to paid to defendant.
I Breach of Contract
The court considers the claim of breach of contract to include breach of the Contract, the Modification or both. The court can find no breach of the terms of the Contract. The court finds no non-conformity of the boat as accepted with the boat as sold by the Contract. CT Page 8415
The Modification made the sale "subject to a satisfactory Sea Trial and survey and customer satisfaction". The court understands that the intention of the parties was that there be a sea trial and a survey and that defendant would correct problems and defects found as a result of those two undertakings. Plaintiffs chose not to have the survey and thus all defendant had to do was cure any problems located during the sea trial. This it did.
Left out of the above discussion is the concept of "subject to . . . customer satisfaction". Plaintiffs were the "customer" and Wayne at least testified that he was not satisfied.
What their satisfaction was to be was that the sea trial repairs and corrections were made to their satisfaction.
Just saying you are not satisfied is not necessarily enough to prove a lack of satisfaction. Here we have a series of findings that there was a problem, that it was corrected and plaintiffs took and used the boat for a period of time without further complaints about that particular problem. This is customer satisfaction. Defendant is not a life-time insurer or "satisfier". Satisfaction need only be delivered once. Compare Zaleski v Clark 44 Conn. 218. (sculpture)
The only breach of contract was that defendant charged plaintiffs for some work that should have been free under the Modification. This would include only work done and charged for as set out in Exhibits 6 and 8. These two bills with state sales tax add up to $1,645.97. Exhibit 6 was paid in great part by Smith. The plaintiffs' only claim $792 of "overcharges by defendant.
The only other damages plaintiffs claim under the first count are "that they were forced to make numerous repairs to said boat and to obtain alternative dock space". None of those repairs or the expenses in connection with them were caused by defendant's breach of the Contract or Modification.
II Unjust Enrichment
"A right of recovery under [the doctrine of unjust enrichment] is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience CT Page 8416 for the defendant to retain a benefit which has come to him at the expense of the plaintiff." Schleicher v Schleicher120 Conn. 528, 534.
The court has not found facts sufficient to support plaintiffs' burden of proof in regard to their claim for unjust enrichment.
III Product Liability
This count is brought under C.G.S. § 52-572h et seq. alleging eight violation (a thru h of paragraph 5 of Third Count) of our Product Liability statute.
The plaintiffs have failed to sustain their burden of proof as to subparagraphs (b), (c), (d), (e) and (f).
A. Subparagraph (a)
This allegation requires proof not only of the defective conditions of the boat but specifically requires proof that the boat "could not be used without unreasonable risk of injury and loss to plaintiffs". Clearly that part of (a) was not proven. In addition all the sea trial defects were corrected to plaintiffs' satisfaction.
B. Subparagraph (g)
This subparagraph is based on a breach of "an implied warranty of merchantability". In plaintiffs' Memorandum of Law of June 29, 1995 plaintiffs claim a breach of both an implied and an express warranty.
Paragraph 8 of the Contract reads as follows:
8. EXCLUSION OF WARRANTIES. I UNDERSTAND THAT THE IMPLIED WARRANTIES OF MACHINABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED ARE EXCLUDED BY YOU FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT YOU MAKE NO WARRANTIES WHATSOEVER REGARDING THE BOAT OR RIG NOR FOR ANY APPLIANCES OR COMPONENTS CONTAINED THEREIN, EXCEPT AS MAY BE REQUIRED UNDER APPLICABLE STATE LAW.
The plaintiffs have not suggested any warranties which CT Page 8417 "may be required under applicable state law" to create any exception to this broad exclusion. Thus there were not implied warranties in the Contract. Of course, the warranty claimed under the Modification is only express and thus there are no implied warranties in that document.
C. Subparagraph (h)
As noted in III B above there are no warranties stemming from the Contract.
The claim in subparagraph (h) reads as follows:
"In that the defendant breached its express warranties that said boat was safe and effective for its intended use". The boat was safe for its intended use at all times. Because of the problems and defects found upon the sea trial it was not completely effective for its intended use at that' point. Defendant corrected all of the "sea trial defects" by June 1, 1992.
The only question remaining is under the express warranty of the Modification who was to pay for each of the items of work done on the boat after the sea trial and up to June 1, 1992. The answer to this question is the same as the answer to the claims under the first count.
Because this was a genuine contract interpretation dispute the court will award no interest.
Judgment for plaintiffs in the amount of $792
N. O'Neill, J.